# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| TRACY D. HAYES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:08cv00070 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
|  Commissioner of Social Security, | ) | By:   PAMELA MEADE SARGENT |
|     Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Tracy D. Hayes, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2009). This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hayes protectively filed his application for SSI on June 13, 2006, alleging disability as of April 15, 2006,[1] based on "nerves," depression and back problems. (Record, ("R."), at 69-71, 74, 79, 327-A.) The claim was denied initially and upon reconsideration. (R. at 27-29, 34, 35-36.) Hayes then requested a hearing before an administrative law judge, ("ALJ"). (R. at 37.) The ALJ held a hearing on November 14, 2007, at which Hayes was represented by counsel. (R. at 324-51.)

By decision dated March 7, 2008, the ALJ denied Hayes's claim. (R. at 16-24.) The ALJ found that Hayes had not engaged in any substantial gainful activity since June 13, 2006. (R. at 18.) The ALJ found that the medical evidence established that Hayes had severe impairments, namely degenerative disc disease, anxiety and depression, but he found that Hayes's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) The ALJ also found that Hayes had the residual functional capacity to perform medium[2] work that did not require more than simple, routine and repetitive

---

[1]Hayes indicated on his SSI application that his alleged disability date was October 5, 2003. (R. at 69.) He amended his onset date to April 15, 2006, at his hearing. (R. at 327-A.)

[2]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he

tasks. (R. at 19.) The ALJ found that Hayes could not perform any of his past relevant work. (R. at 22.) Based on Hayes's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed that Hayes could perform. (R. at 22-24.) Thus, the ALJ found that Hayes was not under a disability as defined under the Act, and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. § 416.920(g) (2009).

After the ALJ issued his decision, Hayes pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 5-8, 11.) Hayes then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2009). The case is before this court on Hayes's motion for summary judgment filed July 8, 2009, and the Commissioner's motion for summary judgment filed August 7, 2009.

## *II. Facts*

Hayes was born in 1964, (R. at 69, 328), which classifies him as a "younger person" under 20 C.F.R. § 416.963(c). He completed the tenth grade[3] and reported that he attended special education classes.[4] (R. at 84, 328.) He testified that he had a commercial driver's license. (R. at 329.) He has past relevant work experience as a cross country truck driver, a coal miner and a factory laborer. (R. at 80, 86.)

---

also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2009).

[3]Hayes testified at his hearing that he completed the tenth grade. (R. at 328.) However, on his Disability Report he indicated that he completed the eleventh grade. (R. at 84.)

[4]Hayes reported in August 2006 that he never attended special education classes. (R. at 213.)

Vocational expert, Bonnie Martindale, testified at Hayes's hearing. (R. at 345-50.) Martindale classified Hayes's past work as a truck driver as medium, semiskilled work. (R. at 346.) She classified his past work as a laborer in landscaping and tree jobs as heavy,[5] unskilled work. (R. at 346.) Martindale also classified Hayes's past work as a carpenter and construction laborer as heavy, semiskilled work. (R. at 346.)

Martindale was asked to consider an individual of Hayes's age, education and vocational profile and who had the residual functional capacity as indicated by the assessments of Dr. Kevin D. Blackwell, D.O., (R. at 218-22), state agency physician, Dr. Richard Surrusco, M.D., (R. at 249-53), and psychologist, B. Wayne Lanthorn, Ph.D. (R. at 279-81, 347.) Martindale testified that, with these limitations, there would be no jobs available that such an individual could perform. (R. at 347.) Martindale also stated that there would be no jobs available that such an individual could perform if he was limited as indicated by state agency psychologist, Joseph I. Leizer, Ph.D. (R. at 271-73, 348.) Martindale was asked to consider an individual who had only a mild reduction in concentration due to any combination of his depression, his medication, his fatigue and lack of sleeping. (R. at 348.) She stated that there would be jobs available that existed in significant numbers, including jobs as a flagger on a construction site and a janitor, at both the light[6] and medium exertion levels. (R. at 349-50.)

---

[5]Heavy work involves lifting objects weighing no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, he also can do medium, light and sedentary work. *See* 20 C.F.R. § 416.967(d) (2009).

[6]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2009).

In rendering his decision, the ALJ reviewed records from Dr. A. R. Joshi, M.D., a cardiologist; Frontier Health; Mountain View Regional Medical Center; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Wise County Behavioral Services; Dr. Kevin Blackwell, D.O.; Dr. Frank M. Johnson, M.D., a state agency physician; Richard J. Milan, Jr., a state agency psychologist; Dr. Richard Surrusco, M.D., a state agency physician; Joseph I. Leizer, Ph.D., a state agency psychologist; Stone Mountain Health Services; and Edward E. Latham, Ph.D., a clinical psychologist.

On December 9, 2003, Hayes reported to Dr. A.R. Joshi, M.D., that he had not recently experienced panic attacks. (R. at 150.) He also reported that his peptic ulcer disease was stable. (R. at 150.) Hayes underwent a cardiac stress test, which was normal. (R. at 150.) On October 21, 2004, Hayes reported anxiety, depression and low back pain that radiated into his left lower extremity. (R. at 149.) He had minimal tenderness in his lower back, and straight leg raising tests were negative. (R. at 149.) Dr. Joshi reported that Hayes had equal strength and reflexes in both lower extremities; thus, making it unclear what was causing his low back pain. (R. at 149.) On April 7, 2005, Dr. Joshi stated that he could not continue to prescribe Xanax to Hayes without him being seen by a psychiatrist. (R. at 148.) Dr. Joshi noted that Hayes, for nearly 10 years, had been prescribed Xanax by his former physician, Dr. Prince. (R. at 149.) Dr. Joshi noted that his office was not capable of weaning Hayes off Xanax. (R. at 149.) In October 2005, Hayes made an appointment with a counselor at Wise County Behavioral Services, and, Dr. Joshi, therefore, refilled his Xanax prescription. (R. at 142, 312.) In November and December 2005 and January 2006, Hayes told Dr. Joshi that he was attending counseling with Rachel Rose, M.S., and based upon those representations, Dr. Joshi continued to refill Hayes's Xanax

prescription. (R. at 138-40.) In February 2006, Dr. Joshi contacted Wise County Behavioral Services and was advised that Hayes had "not been compliant" with treatment and that his last appointment was November 1, 2005. (R. at 137.) By letter dated February 13, 2006, to Hayes, Dr. Joshi stated that he would no longer treat him due to noncompliance with treatment. (R. at 136.)

On June 29, 2005, Hayes was seen at Frontier Health for complaints of moderate depression, sleep disturbance and "bad nerves." (R. at 180-93.) Hayes reported that counseling helped him in the past to deal with his depression. (R. at 180.) He also reported that he was seen for anger management, which was helpful. (R. at 180.) Hayes complained of severe, social withdrawal, jitteriness and worrying. (R. at 189.) He also admitted to worsening thoughts of suicide in the past year. (R. at 190.) Hayes also complained of severe depressed mood, hopelessness, loss of interest or pleasure and insomnia. (R. at 191.)

On July 20, 2005, Hayes continued to report depressive symptoms, however, he reported that his depression had lessened. (R. at 169, 311.) Hayes's mood appeared mildly anxious with congruent affect. (R. at 169.) He denied suicidal/homicidal ideations. (R. at 169.) Rose reported that Hayes appeared to enjoy the session. (R. at 169.) On November 1, 2005, Hayes reported that he had been "doing okay" since his last session. (R. at 164, 313.) Hayes reported that he had been driving a truck, which helped his mood. (R. at 164.) On March 1, 2006, Hayes was discharged from treatment for noncompliance with appointments. (R. at 158.) At that time, Hayes was diagnosed with dysthymic disorder and generalized anxiety disorder. (R. at 170.) It was indicated that Hayes had a then-current Global Assessment of Functioning score,

("GAF"),[7] of 55.[8] (R. at 170.) It was indicated that his highest GAF score within the previous six months was 55 and his lowest GAF score within the previous six months was 50.[9] (R. at 170.)

On March 13, 2007, Hayes was diagnosed with major depressive disorder, recurrent, moderate, and his GAF score was assessed at 45. (R. at 310.) On August 30, 2007, Hayes reported increased anxiety and depression. (R. at 307.) He was diagnosed with major depressive disorder, single episode, moderate, anxiety disorder, not otherwise specified, and sedative hypnotic or anxiolytic dependence. (R. at 308.) His GAF score was assessed at 40.[10] (R. at 308.) On October 17, 2007, Hayes was diagnosed with major depressive disorder, anxiety disorder, not otherwise specified, and sedative hypnotic or anxiolytic dependence. (R. at 293.) He had a then-current GAF score of 50 with his highest GAF score being 50 in the previous six months. (R. at 293.) Hayes complained of severe decrease in energy or fatigue, social withdrawal, anxiety, jitteriness, panic attacks, distractibility, racing thoughts, depressed mood, hopelessness, loss of interest or pleasure, low self-esteem and insomnia. (R. at 295,

---

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[8]A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

[9]A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

[10]A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. DSM-IV at 32.

297.) Hayes also reported that he had attempted suicide by overdose a year earlier. (R. at 296.)

On April 21, 2006, Hayes was admitted to Mountain View Regional Medical Center following an unintentional overdose of Zyprexa[11] and alcohol. (R. at 194-202.) According to Hayes's wife, he obtained the medication from another person who was not a physician. (R. at 214.) Upon admission, Hayes's blood alcohol level was 294 mm./dl., and he was noted to have a history of alcohol abuse. (R. at 194, 206.) He was discharged on April 23, 2006, in stable condition. (R. at 194-97.) Hayes reported, at the time of discharge, that he felt "fine" and that he had no problems. (R. at 201.) It was recommended that Hayes contact The Laurels for alcoholic counseling. (R. at 197.)

On August 8, 2006, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Hayes a the request of Disability Determination Services. (R. at 212-17.) Lanthorn characterized Hayes's April 26 hospitalization as a suicide attempt rather than an unintentional overdose. (R. at 214.) Hayes reported that he had functioned significantly better when he was taking Xanax. (R. at 213.) Lanthorn diagnosed generalized anxiety disorder, panic disorder without agoraphobia and major depressive disorder, recurrent, moderate or greater. (R. at 216.) Lanthorn assessed Hayes's then-current GAF score at 55. (R. at 216.) Lanthorn reported that Hayes was not capable of performing a 40-hour workweek, even with simple and repetitive tasks. (R. at 217.)

---

[11]Zyprexa is a psychotropic agent used for the treatment of schizophrenia and bipolar disorder. *See* PHYSICIAN'S DESK REFERENCE, ("PDR"), at 1984-85 (64th ed. 2010).

On September 20, 2007, more than one year after his evaluation, Lanthorn completed a mental assessment indicating that Hayes was slightly limited in his ability to understand, remember and carry out simple instructions. (R. at 279-81.) Lanthorn indicated that Hayes had a seriously limited ability to make judgments on simple work-related decisions, to carry out complex instructions, to make judgments on complex work-related decisions, to interact with the public, to interact appropriately with supervisors, to interact appropriately with co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 279-80.) Lanthorn also indicated that Hayes had no useful ability to understand and remember complex instructions. (R. at 279.) He reported that these limitations would have been present in 2003. (R. at 280.)

On August 23, 2006, Dr. Kevin Blackwell, D.O., examined Hayes at the request of Disability Determination Services. (R. at 218-22.) Hayes complained of upper back pain. (R. at 218.) He reported that he occasionally consumed alcohol. (R. at 219.) Dr. Blackwell reported that Hayes was alert, cooperative and oriented with good mental status. (R. at 219.) Hayes's gait was symmetrical and balanced. (R. at 220.) Upper and lower extremities had normal size, shape, symmetry and strength. (R. at 220, 222.) Upper and lower reflexes were good and equal bilaterally. (R. at 220, 222.) Hayes had some tenderness throughout his lumbar area. (R. at 220.) X-rays of Hayes's lumbar spine showed degenerative disc disease at the L1-L2, L4-L5 and L5-S1 levels. (R. at 223.) Dr. Blackwell diagnosed cervical/lumbar pain, bilateral knee pain and history of anxiety and depression. (R. at 220.) Dr. Blackwell reported that Hayes should limit squatting, kneeling, crawling and stooping activities to two-thirds of the day or less. (R. at 220.) He reported that Hayes could occasionally lift items weighing up to 50 pounds and frequently lift items weighing up to 25 pounds. (R. at 220.)

Hayes's ability to sit and stand was not compromised. (R. at 220.) No limitation in Hayes's hand usage was noted, including fine motor movement skill activities. (R. at 220-21.)

On August 29, 2006, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Hayes had the residual functional capacity to perform medium work. (R. at 224-30.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 226-27.)

On September 1, 2006, Richard J. Milan, Jr., Ph.D., a state agency psychologist, indicated that Hayes had moderate limitations in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (R. at 231-33.) Milan reported that Hayes was able to meet the basic demands of competitive work on a sustained basis despite the limitations resulting from his impairment. (R. at 233.)

That same day, Milan completed a Psychiatric Review Technique form, ("PRTF"), indicating that Hayes suffered from an affective disorder, an anxiety-related disorder and a substance addiction disorder. (R. at 234-48.) He indicated that Hayes had mild limitations in his ability to perform activities of daily living and moderate limitations in his ability to maintain social functioning and to maintain

concentration, persistence or pace. (R. at 244.) No episodes of decompensation were noted. (R. at 244.)

On December 28, 2006, Dr. Richard Surrusco, M.D., a state agency physician, indicated that Hayes had the residual functional capacity to perform medium work. (R. at 249-55.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 251-52.)

On January 9, 2007, Joseph I. Leizer, Ph.D., a state agency psychologist, completed a PRTF indicating that Hayes suffered from an affective disorder, an anxiety-related disorder and a substance addiction disorder. (R. at 256-70.) He indicated that Hayes had no limitations in his ability to perform activities of daily living and moderate limitations in his ability to maintain social functioning and maintain concentration, persistence or pace. (R. at 266.) No episodes of decompensation were noted. (R. at 266.)

That same day, Leizer completed a mental assessment indicating that Hayes had moderate limitations in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (R. at 271-72.) Leizer reported that Hayes was able to meet the basic mental demands of simple, unskilled and nonstressful

competitive work. (R. at 272.)

On May 10, 2007, Hayes was seen at Stone Mountain Health Services complaining of "nerves," back problems and numbness in his hands. (R. at 274-78.) Hayes's mood and affect was noted as anxious. (R. at 275.) Straight leg raising tests were negative. (R. at 275.) It was noted that Hayes had a tremor. (R. at 275.)

On December 21, 2007, Edward E. Latham, Ph.D., a clinical psychologist, evaluated Hayes. (R. at 314-16.) Hayes reported that he had two driving under the influence charges, one in the 1980s and one in the year 2000. (R. at 314.) Hayes reported that he occasionally consumed beer. (R. at 314.) Latham diagnosed major depressive disorder, chronic, moderate, panic disorder with agoraphobia and avoidant personality disorder. (R. at 316.) He reported that Hayes was able to understand, remember and carry out simple instructions and to perform routine, repetitive tasks. (R. at 316.) Hayes's attention and concentration was sufficient for simple tasks. (R. at 316.) Hayes's ability to relate interpersonally and to handle everyday stressors was moderately impaired. (R. at 316.)

Latham completed a mental assessment indicating that Hayes's ability to understand, remember and carry out instructions was not affected by his impairment. (R. at 317-19.) He indicated that Hayes had a satisfactory ability to interact appropriately with supervisors, co-workers and the public. (R. at 318.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20

C.F.R. § 416.920 (2009); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2009).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2009); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated March 7, 2008, the ALJ denied Hayes's claim. (R. at 16-24.) The ALJ found that the medical evidence established that Hayes had severe impairments, namely degenerative disc disease, anxiety and depression, but he found that Hayes's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) The ALJ also found that Hayes had the residual functional capacity to perform medium work that did not require more than simple, routine and repetitive tasks. (R. at 19.) The ALJ

found that Hayes could not perform any of his past relevant work. (R. at 22.) Based on Hayes's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed that Hayes could perform. (R. at 22-24.) Thus, the ALJ found that Hayes was not under a disability as defined under the Act, and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. § 416.920(g).

Hayes argues that the ALJ erred by determining that a significant number of jobs exist in the economy that he could perform. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 5-6.) Hayes also argues that the ALJ erred by failing to give full consideration to the findings of Lanthorn. (Plaintiff's Brief at 6-7.)

The ALJ in this case found that Hayes had the residual functional capacity to perform medium work that did not require more than simple, routine and repetitive tasks. (R. at 19.) Based on this finding, the ALJ found that a significant number of jobs existed in the economy that Hayes could perform. (R. at 22-24.) Based on my review of the record, I find that substantial evidence does not exist to support these findings.

In August 2006, Lanthorn diagnosed generalized anxiety disorder, panic disorder and major depressive disorder. (R. at 216.) He indicated that Hayes had a seriously limited to no ability to perform work-related activities. (R. at 279-81.) In September 2006, state agency physician Milan indicated that Hayes suffered from an affective disorder, an anxiety-related disorder and a substance addiction disorder. (R. at 234-48.) He found that Hayes had moderate limitations in his ability to maintain

social functioning and to maintain concentration, persistence or pace. (R. at 244.) In January 2007, state agency psychologist Leizer found that Hayes had moderate limitations in his ability to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace, to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (R. at 271-72.) The record shows that in March, August and October 2007, Hayes was diagnosed with major depressive disorder, anxiety disorder and sedative hypnotic or anxiolytic dependence. (R. at 293, 307-08, 310.) His GAF scores were assessed between 40 and 50 during this time period, indicating that he had moderate to serious impairments. (R. at 293, 308, 310.) In December 2007, Latham diagnosed major depressive disorder, panic disorder with agoraphobia and avoidant personality disorder. (R. at 316.) He indicated that Hayes's ability to relate interpersonally and to handle everyday stressors was moderately impaired. (R. at 316.)

At Hayes's hearing, the vocational expert was asked if there would be jobs available that an individual could perform should he be limited as indicated by Lanthorn and Leizer. (R. at 347-48.) The vocational expert testified that there would be no job available that an individual could perform should he possess such limitations. (R. at 347-48.) The vocational expert testified that should the individual have only a *mild* reduction in concentration, that he could perform jobs that existed in significant number, including jobs as a flagger and a janitor. (R. at 349-50.)

The vocational expert testified that a significant number of jobs existed at the light and medium exertion level that an individual, who had only a *mild* reduction in concentration could perform. (R. at 349-50.) The ALJ noted that he gave significant weight to the state agency psychologists and the assessment of Latham in determining Hayes's mental residual functional capacity. (R. at 21-22.) Both state agency psychologists indicated that Hayes suffered from moderate limitations in his ability to maintain attention and concentration. (R. at 244, 271-72.) Latham indicated that Hayes suffered from moderate limitations in his ability to relate interpersonally and to handle everyday stressors. (R. at 316.) Furthermore, GAF scores assessed in 2007 indicated that Hayes suffered from moderate to severe impairments. (R. at 293, 308, 310.) Since the vocational expert identified jobs that an individual with only a *mild* reduction in concentration could perform, I cannot determine that a significant number of jobs exist that Hayes, who has been diagnosed with moderate limitations, could perform. (R. at 349-50.)

I do find, however, that substantial evidence exists to support the ALJ's finding with regard to Hayes's physical residual functional capacity. Dr. Blackwell and the state agency physicians all determined that Hayes had the residual functional capacity to perform medium work. (R. at 218-22, 224-30, 249-55.) Furthermore, there is no indication in the record that any of Hayes's treating, examining or evaluating physicians reported that Hayes had a physical impairment which would preclude him from perform work-related activities.

Based on the above, I find that substantial evidence exists to support the ALJ's finding with regard to Hayes's physical residual functional capacity. I do not find that

substantial evidence exists to support the ALJ's finding that a significant number of jobs exist that Hayes could perform from a mental standpoint.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding with regard to Hayes's physical residual functional capacity;

2. Substantial evidence does not exist to support the ALJ's finding with regard to Hayes's mental residual functional capacity;

3. Substantial evidence does not exist to support the ALJ's finding that a significant number of jobs exist in the national economy that Hayes could perform; and

4. Substantial evidence does not exist to support the ALJ's finding that Hayes was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Hayes's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand this case to the Commissioner for further consideration.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2009):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 4th day of January 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE